*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. M. BAHAM, Minor.

FOR PUBLICATION
April 2, 2020

No. 349595
Van Buren Circuit Court
Family Division
LC No. 17-018872-NA

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

MARKEY, P.J. (*concurring in part, dissenting in part*).

I fully agree with the analysis and conclusion set forth in the lead opinion with respect to the adjudicative phase of the proceedings and the determination that the trial court had jurisdiction. But I strongly disagree with my colleagues that the trial court committed clear error by finding clear and convincing evidence in support of termination. I would affirm the order terminating respondent-mother's parental rights under MCL 712A.19b(3)(h) (parent is imprisoned for such a period that the child will be deprived of a normal home for more than two years). Accordingly, I concur with regard to the issue of jurisdiction and dissent on the matter of termination under MCL 712A.19b(3)(h).

With respect to the dispositional phase of the proceedings and termination, I begin with respondent's argument that the court failed to articulate the specific statutory grounds upon which it was terminating her parental rights. MCR 3.977(I)(3) provides that "[a]n order terminating parental rights under the Juvenile Code may not be entered unless the court makes findings of fact, states its conclusions of law, and includes the statutory basis for the order." The court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The Department of Health and Human Services (DHHS) pursued termination under MCL 712A.19b(3)(h) and (j). Section 19b(3)(h) provides for termination when "[t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Section 19b(3)(j) provides for termination

-1-

when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

My review of the trial court's ruling from the bench reveals that the court did not make specific reference to § 19b(3)(h) or (j).[1]  The court did, however, devote a great deal of time discussing respondent, her lengthy imprisonment, BB, and BB's best interests.  But, the fact is, although the trial court implied as much, it did not make the requisite specific findings that there existed a reasonable likelihood that BB would be harmed if placed in respondent's care.  Therefore, I must agree that termination cannot be affirmed on the basis of § 19b(3)(j).

On the other hand, the record is more than adequate to discern that the trial court terminated respondent's parental rights under § 19b(3)(h). The trial court noted the horrendous armed robbery respondent aided and abetted against her own father, a crime that resulted in her father's near death and which was perpetrated in the presence of her own son, and which led to her conviction for armed robbery and a lengthy prison sentence.  The court also observed that respondent would serve at least three years before she might be released from prison.  Further, the trial court heavily referenced the prior termination proceedings regarding respondent's son who was present during the crime and who is BB's half-brother and not at issue here.[2]

The trial court additionally alluded to the three-month period before respondent was arrested and incarcerated for armed robbery in January 2018.  While acknowledging that respondent had done well in prison, the court stressed that that three-month window was "the only time that [it could] really look at to determine what [respondent] would be like outside of incarceration because she has been incarcerated since January of 2018."  Moreover, the court noted that respondent failed miserably at the time with respect to complying with the treatment plan and that she then basically disappeared.  The trial court further stated:

> Obviously, [respondent] is unable to provide for [BB] and her parenting ability, as far as we could tell with the other child, is extremely poor. The child was left with [respondent's] dad a lot apparently and left with other people and she appears to have some issues when she is stressed and possibly some developmental

---

[1] The order terminating respondent's parental rights also did not specifically identify the particular statutory ground or grounds that the court relied on in making its ruling.

[2] In October 2017, respondent participated in the armed robbery.  The DHHS removed respondent's son from her care in November 2017.  In January 2018, respondent was arrested for aiding and abetting the armed robbery.  After pleading guilty, she was sentenced to 5 to 20 years' imprisonment in May 2018.  Her earliest release date is January 8, 2023.  BB was born in September 2018 while respondent was in prison.  In November 2018, respondent's parental rights to her son were terminated, and respondent did not appeal that termination.  In the proceedings regarding her son, respondent failed to comply with her treatment plan with respect to participating in substance abuse counseling, random drug screens, parenting education, and emotional stability services.

problems herself and certainly did not have great parenting skills when she was with the other child.

The court reiterated that it would be about three years, at the earliest, before respondent was released from prison. The trial court continued:

> And then obviously the child would not be back in her care immediately. She'd have to once again show that she's dealing with whatever issues she needs to deal with, including any mental health issues, work-related issues, housing issues, looking at whether she has a substance abuse problem and whether or not that would come to light again once she's released so there's a lot of things that would have to be taken care of before this child would be able to be returned home. So at minimal, we're looking at three-and-a-half to four years. And right now BB is . . . almost nine months old so we're looking at a child who would most likely be five years old before she's looking at being returned to the care of her mother.

The court additionally found that "the fact that [BB] would be almost five years old before there'd be any chance of reunification make[s] it clear that we cannot for this child's sake allow -- not terminate today." The trial court then concluded that "[t]here is clear and convincing evidence that a statutory basis exists for the termination of parental rights."

When read in context and in their entirety, the court's observations and findings as discussed above sufficed to reflect a proper determination that respondent was imprisoned for a period exceeding two years, that she had not provided for BB's proper care and custody, and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering BB's age. MCL 712A.19b(3)(h).

Next, respondent contends that even assuming the statutory grounds the court relied on were MCL 712A.19b(3)(h) and (j), the court clearly erred by finding that those grounds were proven by clear and convincing evidence. Given my conclusion regarding § 19b(3)(j), I examine this issue solely in the context of § 19b(3)(h). And I again strongly disagree with the majority opinion that the trial court clearly erred by terminating respondent's parental rights under § 19b(3)(h).

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); MCR 3.977(H)(3); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). When applying the clear error standard in parental termination cases "regard is to be given to the special opportunity of the trial court to

judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children. *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014). It is clear that the trial court in the instant case relied on these two legal principles or doctrines in making its ruling, emphasizing respondent's treatment plan failures in relation to her son. I find no clear error in the court's doing so. Respondent's abysmal failures resulting in the termination of her parental rights to her son reflected an inability to properly care for a child. Respondent's failure to comply with her treatment plan and to utilize services designed for her did not occur years ago—they occurred immediately *before* respondent was incarcerated. Respondent's in-prison compliance with the treatment plan *while in the early stages of her imprisonment* was not enough to be predictive of her future and overcome or obviate the reality of her prior conduct. For the factual and legal reasons the trial court carefully articulated and that I recited, quoted, and referenced earlier, I cannot conclude that the court clearly erred by finding that there was clear and convincing evidence to support termination of respondent's parental rights to BB under MCL 712A.19b(3)(h). Respondent does not challenge the trial court's ruling regarding BB's best interests, so it is not our job to do so here.

I certainly recognize that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010). I also acknowledge that "Michigan traditionally permits a parent to achieve proper care and custody through placement with a relative." *Id.* at 161 n 11. But here, respondent not only has a serious poor parenting history and a prior termination of an older child, she is in prison for several more years. BB will be 4 years old when or if her mother is released in January of 2023. Respondent will be a complete stranger to this child who will have been living in a stable environment her entire life. Nor can one be oblivious to the fact that respondent's incarceration arose from her assistance in a frightening, near fatal, assault against her own father while he was caring for her son, the child already lost in her prior termination proceedings. Instead, the majority views this case in a vacuum, focusing exclusively on respondent's time in prison, i.e., while in a very structured, confined, and controlled setting, far removed from her everyday life. That the majority hones in on respondent's "good" behavior during this period of imprisonment and, frankly in my view, irrelevant timeframe as a basis for predicting her behavior three plus years in the future upon release from prison and as a reason for concluding that the trial court *clearly* erred in terminating her rights to BB is mystifying at best, and in my opinion, legally incorrect. The majority also is misguided in its focus on BB instead of giving context to the proceedings and considering the far more telling circumstances pertaining to the previous termination of respondent's parental rights to her son and her long term unacceptable pre-incarceration behavior.

Along with the termination of her parental rights to her son and her treatment plan failures, we must also consider, as did the trial court, respondent's psychological status. Respondent's psychological evaluation indicated that she was detached from her son, that she was "extremely dependent on others," and that she was fearful of rejection and abandonment. The psychological report further revealed that respondent's cognitive functioning fell within a "borderline range" and

that she would have difficulty with planning and anticipating situations and consequences in her life. In terms of parenting, respondent was deemed at risk for patterns of abuse and neglect. Additionally, the psychological report noted that respondent was "quite self-preoccupied," easily overwhelmed, and would have difficulties subjugating her needs to the needs of a child. Surely, this evidence coupled with respondent's undisputed history weighs far more heavily and serves as a far better predictor of respondent's behavior three years hence than that of her conduct exhibited during only the first year or so of her 5-20 year prison sentence. How can the majority conclude under these facts that the trial court clearly erred?

I do not read *In re Mason* for the proposition that an imprisoned parent can avoid termination under § 19b(3)(h) in all cases where the child at issue is placed with relatives who provide the child with proper care and custody. In the instant case, the termination of respondent's parental rights to her son, her past noncompliance with services and failure to provide proper care or custody to a child, and her precarious psychological state all support the trial court's basis for termination under MCL 712A.19b(3)(h) no matter that respondent's brother and sister-in-law were caring for BB. In sum, there was sufficient evidence showing that BB would be deprived of a normal home for a period exceeding two years due to respondent's imprisonment, that respondent had not provided for BB's proper care and custody,[3] and that there was no reasonable expectation that respondent would be able to provide proper care and custody "within a *reasonable* time considering [BB's] age." MCL 712A.19b(3)(h) (emphasis added). In my view, reversal is wholly unwarranted. I would affirm the termination of respondent's parental rights. Finally, I urge DHHS to seek leave to our Supreme Court for the important task of clarifying this issue.

I concur in part and dissent in part.

/s/ Jane E. Markey

---

[3] I note that it was not "the parent" who "provided for the child's proper care and custody," MCL 712A.19b(3)(h); rather, it was the DHHS that ultimately provided for BB's care and custody by placing her with respondent's brother and sister-in-law. Respondent simply had multiple unexecuted ideas regarding BB's care.